James V. PARKS, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–556.

District of Columbia Court of Appeals.

Argued February 22, 1995.

Decided April 6, 1995.

---

sell's daughter) on the same date (*id.* § 22–501 (1989)), and related burglary and weapons charges stemming from the same events. It also found him guilty of assaulting Page on June 23, 1990 (*id.* § 22–504(a) (Supp.1994)).

■ Appellant's principal argument on appeal is that the trial judge abused his discretion in not restricting the quantity and kind of evidence of prior threats and assaults committed by appellant against Page, his former girlfriend, beginning in approximately March of 1990. That evidence was admitted to prove appellant's identity as the assailant on June 30, a fact he contested. Our prior decisions satisfy us that the judge exercised sound discretion in admitting this evidence of appellant's recent hostile acts toward Page. *E.g., Mitchell v. United States,* 629 A.2d 10, 13–14 (D.C.1993); *Robinson v. United States,* 623 A.2d 1234, 1238–40 (D.C.1993); *Hill v. United States,* 600 A.2d 58, 60–62 (D.C.1991). The point does not require further discussion.[1]

■ Indeed, only one issue necessitates this published opinion. On the facts presented, we hold that the judge should have severed the charge of the June 23, 1990, simple assault on Page from the much graver charges stemming from the June 30 shootings. We therefore reverse appellant's conviction for simple assault. We also direct the judge on remand to vacate one of appellant's two murder convictions involving the same victim. *Byrd v. United States,* 510 A.2d 1035 (D.C.1986) (en banc). In all other respects, we affirm.

\*　　\*　　\*　　\*　　\*　　\*

The June 23 assault was originally charged as assault with a dangerous weapon (shod foot) (D.C.Code § 22–502 (1989)), but the judge reduced it to simple assault on appellant's later motion for judgment of acquittal. Appellant filed a pretrial motion to sever the single June 23 count from the June 30 charges, contending (among other things) that the jury inevitably would amalgamate the evidence of the alleged murder and assault with intent to kill on June 30 with the

---

Richard S. Greenlee, Public Defender Service, with whom James Klein and Sandra Levick, Public Defender Service, were on the brief, for appellant.

Diana M. Harris, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., were on the brief, for appellee.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty of both premeditated and felony murder for the shooting death of Catherine Russell on June 30, 1990 (D.C.Code § 22–2401 (Supp.1994)), assault with intent to kill Virginia Page (Rus-

---

1. We also conclude that the improprieties appellant cites in the prosecutor's closing argument, one of which led to a strong curative instruction by the trial judge, were insufficient to compel the grant of a mistrial. *E.g., McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991).

proof of his assault on Page on June 23. The government responded that severance was unnecessary because evidence of the two incidents would be mutually admissible in separate trials. The judge, evidently skeptical of this argument, denied severance on the alternative ground that the prosecutor and court could take steps sufficient to insure separate consideration of the episodes by the jury. In the course of trial, appellant renewed his motion to sever by pointing out that the prosecutor's presentation of the government's proof had confounded the judge's expectation. The judge again denied the motion, but instructed the jury twice on the need to consider the evidence relevant to the two dates separately.

■ This court will reverse the denial of a motion to sever counts under Super.Ct.Crim.R. 14 only upon a clear showing of abuse of discretion. *Winestock v. United States*, 429 A.2d 519, 526 (D.C.1981). Moreover, our decisions assume, as they must, the general efficacy of limiting instructions. *E.g., Brock v. United States*, 404 A.2d 955, 959 (D.C.1979). Nevertheless, in analyzing "the 'separate and distinct' doctrine" as a basis for preserving joinder of charges, we have explained:

> [The doctrine] permits the joint trial of charges when "the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence is substantially reduced." Given the danger that the jury might infer guilt from a defendant's criminal disposition or might be disposed to convict because of hostility to the defendant, both court and counsel *must conduct the trial with a "vigilant precision in speech and action far beyond that required in the ordinary trial."* Even if the trial court initially denies a pretrial motion to sever, it "has a continuing duty at all stages of the trial to grant a severance if prejudice appears upon the presentation of evidence at trial."

*Cox v. United States*, 498 A.2d 231, 235 (D.C. 1985) (emphasis added; citations omitted).

We agree with appellant that, as this trial unfolded, the judge's expectation that the prosecutor could separate the two episodes "with a 'vigilant precision in speech and action'" was not borne out. Indeed, the judge recognized that things had not gone as planned, telling the prosecutor late in the trial: "I would imagine this jury is going to be completely befuddled about what you are doing and where you are going. I am absolutely astonished at the way this case is being presented."[2] Not entirely through his own fault, the prosecutor presented thirty-one witnesses in a sometimes haphazard, decidedly non-chronological fashion.[3] The first witness was the doctor who removed the bullet from Page's back after the June 30 shooting. The next two were police officers who investigated the June 23 assault, followed by two officers who responded to the June 30 murder scene. After additional medical and police witnesses testified about June 30, seven people testified about appellant's post-shooting behavior on that date, including his admission to the shootings. But the testimony of one of these witnesses was interrupted by further medical testimony about Page's injuries from the June 23 assault. The government then presented six witnesses (including Page) who had observed either the shootings on June 30 or events just before or after them, including appellant's possession of a handgun. Two of these witnesses, however, including Page, testified as to both the June 23 and June 30 assaults.

When joined charges are similar, there is a special risk that the jury may amalgamate the evidence "into a single inculpatory mass." *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C.1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978). Page was a victim in both confrontations, which occurred within a week of each other in the same neighborhood; and each involved an assault motivated by appellant's jealous anger and unwillingness to let Page leave him, which

---

**2.** As early as the prosecutor's opening statement the judge had admonished him, "You did a terrible job of keeping clear that there are two separate offenses on two separate days."

**3.** Among other things, the prosecutor had to accommodate the schedules of medical witnesses by presenting their testimony whenever they were available.

the government proved by the evidence of earlier threats and assaults. Even so, the instructions the judge twice gave the jury to consider the evidence of the two dates separately might have sufficed but for the confused presentation of evidence described above. To sustain the denial of severance on the ground predicated by the trial judge, we must be convinced at least of the probability that the jury did not cumulate the evidence. *Drew v. United States,* 118 U.S.App.D.C. 11, 20, 331 F.2d 85, 94 (1964) (conviction reversed where reviewing court "[could] not say that the jury probably was not confused or probably did not misuse the evidence"). On this record, we lack that degree of assurance that the jury succeeded in the task set for them by the judge's instructions.

 Still, severance need not be granted if "the evidence of each of the joined crimes would be admissible at the separate trial of the others." *Bridges,* 381 A.2d at 1075. Although the judge made no ruling on this question, an affirmative answer would provide a separate basis for upholding the denial of a severance. But the government, though it argued mutual admissibility at trial in opposing the motion to sever, has not done so on appeal, with good reason. Appellant concedes that proof of the June 23 assault would have been admissible at a separate trial of the June 30 crimes, for the same reason that his earlier uncharged threats and assaults were admitted. But he argues—and we agree—that evidence of the murder and attempted murder on June 30, if admitted at a trial of the simple assault, would have created an extreme risk of prejudice no matter what instructions the judge gave regarding the limited use of the evidence.[4] Before admitting proof of uncharged crimes, a judge must balance the danger of unfair prejudice against the probative value of the evidence. *E.g., German v. United States,* 525 A.2d 596, 607 (D.C.), *cert. denied,* 484 U.S. 944, 108

S.Ct. 331, 98 L.Ed.2d 358 (1987). In the circumstances presented, only one reasonable outcome of that balancing was possible: the prejudice from the graphic and compelling evidence of the murder and attempted murder dwarfed any legitimate value it had in proving the simple assault.

 Commonly, where a trial judge has not undertaken a required balancing of probative versus prejudicial value of proffered evidence, this court will remand for an admittedly *post-hoc* evaluation of the evidence. *E.g., Collins v. United States,* 596 A.2d 489, 494–95 (D.C.1991). This case, however, is the unusual one where the appellate court can say with assurance that there would be only one permissible outcome of the balancing. *See Wright v. United States,* 508 A.2d 915, 920 (D.C.1986).

 It remains for us to reject the government's argument that the evidence of the June 23 assault itself was strong enough to neutralize any spill-over from proof of the June 30 crimes, and thus render harmless any error. Although Page testified about the assault and there was medical evidence that she suffered bruises to her face and head as a result, another witness, Michelle Wright, watched the confrontation and described it as a "fight[ ]" between Page and appellant[5] in which neither seemed to have the upper hand—each holding on to the other while third persons sought to pull them apart. The risk that appellant's shooting Page and shooting her mother to death a week later influenced the jury's evaluation of the June 23 events was therefore overwhelming.

In sum, we find no basis on which to reverse appellant's convictions for the June 30 crimes,[6] but reverse and remand for a new trial (if the government chooses to proceed) on the June 23 charge of assault. *Cf. Settles v. United States,* 522 A.2d 348, 354 (D.C.

---

4. We need not consider appellant's claim that the June 30 events were *irrelevant* to prove the earlier assault on Page. Appellant's defense to the June 30 charges was that (though he was in the house at the time) another person, Charles Taylor, had done the shootings for his own reasons. As to the June 23 assault, appellant effectively conceded his identity, *i.e.,* that he and Page had struggled, but denied that he had assaulted her.

5. Page's statement to the police also described the altercation as a "fight."

6. As indicated, the trial judge must vacate one of the two murder convictions.

1987) (misjoinder "may be partially harmless and require only a partial reversal" where "offense B may be inadmissible in a trial for offense A, but offense A may be admissible in a trial for offense B").

*So ordered.*