Anthony SHULER, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1244.

District of Columbia Court of Appeals.

Argued March 12, 1996.

Decided May 30, 1996.

Dale Warren Dover, Washington, DC, for appellant.

L. Jackson Thomas, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and RUIZ, Associate Judges.

FARRELL, Associate Judge.

Appellant was found guilty by a jury of, among other things, first degree premeditated murder while armed (D.C.Code §§ 22–2401, –3202 (1989)). For that crime he was sentenced to imprisonment for thirty years to life. His primary argument on appeal is that the trial judge erred in refusing to instruct the jury on the lesser included offense of second degree murder while armed. Our decisions have stated the relevant test to be "whether any evidence in [the] case, however

weak, offered a rational basis for such an instruction." *Hebron v. United States,* 625 A.2d 884, 885 (D.C.1993) (citations omitted).[1] Considering appellant's defense at trial, the evidence supporting second degree murder here was marginal, but as we cannot say that a verdict of guilty on that count but not guilty of first degree murder would have been "irrational," *Walker v. United States,* 617 A.2d 525, 528 (D.C.1992), we must reverse and remand for a new trial.

## I.

The government's principal witness in support of the charge of premeditated murder was Andrew Sharp. He had been jointly charged with appellant with the first degree murder of Leon Iracks, and had pled guilty to second degree murder while armed in return for his testimony at appellant's trial. He was awaiting sentence at the time. Sharp testified, in outline, that he, appellant, and a third person had shot Iracks repeatedly at the insistence of appellant, who feared that Iracks would identify him as the perpetrator of a stabbing a month earlier. According to Sharp, appellant spoke to him "[q]uite a few times" about the need to kill Iracks.

Sharp explained that on the afternoon of October 24, 1992, appellant asked him to track down Iracks and bring him to appellant so that Iracks could be killed. Sharp found Iracks and spent the afternoon with him, then went to the home of a girlfriend around the corner from where the killing would later take place. While Sharp was eating dinner, an individual named Andre Washington knocked on the back door and asked Sharp to follow him. They walked together to the end of an adjoining alley where they met appellant and one Angelo Moore. Appellant handed Sharp a pistol; appellant and Moore were also armed with handguns. Except for Washington, the group walked to the 1400 block of First Street, S.W., where Sharp had last seen Iracks. When they found Iracks,

appellant approached him and, without a word, shot him in the head. Iracks fell to the ground, whereupon all three men fired shots at him while standing over him. According to Sharp, none of the three wore masks, although appellant wore a hood. The group then retreated in the direction from which they had come, Sharp handing his gun back to appellant.

Forensic evidence established that Iracks suffered twenty-one gunshot wounds and that at least four different types of weapons had been used in the murder.

Appellant's defense was misidentification. He produced six witnesses who testified, with little variation among them, to having seen three to five men approach the scene just before the shooting took place. All were dressed in black or dark clothing and all wore masks, hoods, or both. None were known to the witnesses, but all were shorter and stockier than appellant, whom each witness knew. A seventh witness, appellant's brother-in-law, testified that appellant had been at his apartment near Bolling Air Force Base at the time of the murder.[2]

If this had been the sum total of the evidence, no lesser included offense issue would be presented. The trial judge would have been correct in her assessment that whether or not a reasonable doubt of appellant's guilt existed hung "on which side of this case [the jury] believe[s]." But the government, recognizing Sharp's vulnerability as an admitted accomplice turned witness, also called Bonita Douglas to the stand. She lived adjacent to the murder scene and knew Sharp and appellant. She testified that on the night of the shooting she was watching television in her bedroom when she heard a conversation outside her window and, looking out, saw Iracks, Sharp, and appellant talking. When the prosecutor asked whether "they were arguing," she replied initially, "They had a conversation," but on cross-examination twice acknowledged that she had "heard

---

1. The defendant also must establish that all elements of the lesser offense are included within the offense charged, *Simmons v. United States,* 554 A.2d 1167, 1170 (D.C.1989), a point not in dispute here. *See Speaks v. United States,* 617 A.2d 942, 944 (D.C.1992).

2. This witness was impeached with his prior statement to the police that he had not seen appellant on the day of Iracks' murder.

the voices arguing."[3] She observed the group for about five minutes and then went back to watching television. At one point she thought she heard one of the men ask, "Do you have it, where is it?" The conversation ended when, in "[a]bout a blink of an eye" after Douglas left the window (*i.e.*, "[a] minute" later), she heard gunshots. She returned to the window and saw someone lying on the ground.

## II.

■ We first consider the government's argument that appellant waived entitlement to the lesser included offense instruction because he did not specifically call the trial judge's attention to Douglas' testimony arguably implying that the shooting erupted spontaneously ("in the blink of an eye") from a heated discussion between the three or more men, possibly about something Iracks could not produce ("Do you have it, where is it"). The government points to the general admonition in our cases that objections to proposed jury instructions or refusal to instruct "must be made with reasonable specificity." *Hunter v. United States*, 606 A.2d 139, 144 (D.C.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992); *see also Cowan v. United States*, 629 A.2d 496, 503 (D.C.1993).

Appellant's counsel expressly asked for an instruction on second degree murder while armed, pointing out that in his view "there is some basis for it" inasmuch as this "was a frenzy type of killing" ("the number of shots and things like that") in which "we don't really have a lot of evidence as to ... premeditation and deliberation other than what Mr. Sharp says." While this was at best an oblique allusion to Douglas' testimony about an argument followed suddenly by a shooting, the case law does not require more provided the request for a lesser offense instruction is expressly made and is supported in fact by evidence.

In *Young v. United States*, 114 U.S.App. D.C. 42, 309 F.2d 662 (1962), the court of appeals reversed for failure to give a lesser included offense instruction on simple assault

where on the evidence presented the jury "could have reasonably thought [Young] free of any intent to commit a robbery," the crime charged. *Id.* at 43, 309 F.2d at 663. The court traced the differing conclusions the jury could have drawn from the testimony of Young's accomplice, observing that which of these versions to accept "was exclusively a jury choice." *Id.* The court acknowledged that defense counsel had furnished little help to the judge in arraying the different possibilities:

> [D]efense counsel might well have given the trial judge more assistance in presenting what is at best a close question of the right to the claimed charge. While counsel are usually not permitted to argue rulings after they have been made, this problem might well have been avoided had counsel, in requesting the charge, pointed specifically to the testimony on which he relied for the added instruction and to the controlling authorities.

*Id.* The court nevertheless reversed the conviction.

In *Belton v. United States*, 127 U.S.App. D.C. 201, 382 F.2d 150 (1967), the court affirmed a refusal to instruct on the lesser included offense of manslaughter because there was no "'evidence fairly tending to bear upon the issue of manslaughter,' however weak." *Id.* at 206, 382 F.2d at 155 (quoting *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 843, 40 L.Ed. 980 (1896)). In doing so the court emphasized what might be termed the pragmatic importance of a specific citation by trial counsel to the testimony supporting the instruction. It "suggest[ed] that where the issue is close, the request of [defense] counsel may properly be given the benefit of the doubt." *Id.* at 207, 382 F.2d at 156. Therefore, "[i]f the trial court had been specifically apprised of the reconstruction of events now put forward to us by appellate counsel, *it would have been well advised* to give the manslaughter instruction," *id.* (emphasis added), whether or not it was strictly required to. As *Young* had made clear, however, counsel's failure

---

**3.** The government's brief concedes a fair reading of Douglas' testimony to have been that "she

overheard an argument outside of her bedroom window."

"reasonably [to] alert [the judge] to the factual predicate underlying the instruction" would not be decisive provided the instruction was requested and there was evidence "fairly tend[ing] to bear on" the lesser included offense. *Id.* at 207 & n. 16, 382 F.2d at 156 & n. 16. In *United States v. Sinclair,* 144 U.S.App.D.C. 13, 444 F.2d 888 (1971), the court summed up the matter by explaining that "the refusal to give the lesser-included offense instruction is not error when ... the kind of reconstruction of events needed to support a lesser charge is *neither* fairly inferable from the testimony *nor* pointed out by defense trial counsel." *Id.* at 15, 444 F.2d at 890 (emphasis added).

In light of these authorities, we conclude that appellant preserved the claim of failure to instruct on the lesser included offense.

### III.

▊ To justify a lesser included offense instruction, "[t]here must be evidence to support a finding of guilt on the lesser offense." *Id.* at 14, 444 F.2d at 889 (citing *Sparf v. United States,* 156 U.S. 51, 63, 15 S.Ct. 273, 278, 39 L.Ed. 343 (1895)). In general, however, it is not the judge's function to assess the quality of that evidence, which the jury may choose to credit even if the judge believes it overborne by "simply overwhelming" evidence of guilt. *Stevenson,* 162 U.S. at 315, 16 S.Ct. at 839; *Belton,* 127 U.S.App. D.C. at 206, 382 F.2d at 155. The instruction must be given when "the conclusion as to lesser offense is fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *Sinclair,* 144 U.S.App.D.C. at 14–15, 444 F.2d at 889–90. This requirement is "a minimal one; it means any evidence ... however weak." *Day v. United States,* 390 A.2d 957, 962 (D.C.1978).[4] That is to say, the *weight* of the

evidence supporting the instruction is immaterial; as long as a jury could rationally convict on the lesser-included offense after crediting the evidence, the court must give the instruction no matter how inclined it might be to discount that evidence. At the same time, the court is "not required to put the case to the jury on a basis that essentially indulges and even encourages speculations as to bizarre reconstruction." *Sinclair,* 144 U.S.App.D.C. at 15, 444 F.2d at 890; *see West v. United States,* 499 A.2d 860, 865 (D.C.1985) (no error in withholding instruction that lacked a "rational basis" in the evidence and would have encouraged jury to undertake a "bizarre reconstruction" of the proof).

▊ The government argues that a conviction on second degree murder would have entailed such a fanciful reconstruction of the evidence here. We do not agree. As the government recognizes, the issue does not depend on whether the jury credited the defense testimony. *See Sinclair,* 144 U.S.App.D.C. at 15, 444 F.2d at 890 (the "kind of reconstruction of events needed to support a lesser charge" may be fairly inferable even though the jury rejects defendant's "completely exculpatory" testimony).[5] The jury readily could have dismissed the rote testimony of appellant's six "eyewitnesses" out of hand—both its suggestion that appellant was not present at the killing *and* its suggestion that unknown masked and hooded persons had done the slaying as a preplanned "hit." And, although Sharp's testimony for the government also portrayed the slaying as planned while naming appellant as the principal assailant, the jury rationally could have credited the latter part of his testimony while disbelieving the former. Sharp had pled guilty to second degree murder and was awaiting sentence; he thus had

---

**4.** As the court stated in *Day:*

A lesser-included offense instruction will not be proper unless proof of the greater offense charged will require the jury to find a disputed fact that need not be found to prove the lesser offense. Once a defendant asserts that there is such a factual dispute, the court must give a lesser-included offense instruction if "there is some evidence upon the subject."¹ This eviden-

tiary requirement is a minimal one; it means " 'any evidence' ... however weak."

390 A.2d at 962 (citations omitted).

**5.** "That an exculpatory defense was presented does not preclude a lesser included offense instruction if the other evidence presented provides a basis for finding defendant guilty of the lesser included offense." *Anderson v. United States,* 490 A.2d 1127, 1130 n. 2 (D.C.1985).

reason—so the jury might think—to maximize appellant's responsibility for the shooting while reducing his own, by asserting (for example) that appellant had thrust a gun into his hand at the scene. Sharp was also impeached with his prior convictions and prior inconsistent statements regarding appellant's motive for the shooting. Moreover, Bonita Douglas, who had no such disabilities, corroborated Sharp's testimony only as to appellant's identity as one of the shooters. Her testimony, as set forth above, allowed at least an inference that the shooting, while malicious, was the immediate outgrowth (done "in the blink of an eye") of an altercation at the scene.

The government discounts this theory because of the sheer number of shots (21) as well as guns (at least 4) fired and other forensic evidence showing that at least some of the shots were fired from very close range. At some point in this carnage, the government implies, the assailants must have turned the matter over in their minds, see *Austin v. United States*, 127 U.S.App.D.C. 180, 187 n. 14, 382 F.2d 129, 136 n. 14 (1967) (defining "deliberation" for purpose of first degree murder), even if the shooting stemmed directly from an argument with Iracks. It was also obvious that the three or more assailants were armed when they found Iracks, and—the government asserts—the fusillade of shots fired as though on signal shows "the conspiratorial nature of the killing." These are forceful arguments, especially since appellant's counsel, though requesting a second degree murder instruction, admitted the relative weakness of its support by stating his intent to argue only misidentification to the jury. But the standard to be applied is whether a jury, by crediting Douglas' testimony and discounting part of Sharp's, would have any "rational basis," *Hebron, supra*, 625 A.2d at 885, for retaining a doubt as to premeditation and deliberation. Only if such a finding would " 'strain[ ] credulity to the breaking point,' " *Anderson, supra* note 5, 490 A.2d at 1130 (citation omitted), could we uphold the rejection of appellant's request. We cannot do so, and we therefore reverse appellant's conviction.[6] If on retrial the evidence unfolds as it did in the first trial, appellant must receive a second degree murder instruction upon request.

## IV.

■■■ In view of this conclusion, we need only address one other point appellant raises. A key part of Sharp's testimony was his report of appellant's admission to him, about a month before the shooting, that appellant would have to kill Iracks because Iracks had seen appellant stab someone. The government offered this "other crime" evidence by a motion *in limine* as proof of appellant's motive. See *Robinson v. United States*, 623 A.2d 1234, 1239 (D.C.1993). Appellant argues that the trial judge allowed Sharp to testify about the admission without finding by clear and convincing evidence that the stabbing, which apparently had not been reported to the police, ever took place. See *Daniels v. United States*, 613 A.2d 342, 347 (D.C.1992) (government's pretrial "proffer ... must show the trial court that the evidence that it proposes to present during the trial would, if believed, clearly and convincingly establish that the uncharged crime occurred and the defendant[ ] [was] connected to it") (footnote omitted).

---

6. The government cites *Cowan v. United States, supra*, in arguing that failure to give the lesser included offense instruction was harmless error on the facts of this case. We opined in *Cowan* that "under the unique circumstances of [that] case" the refusal to instruct on self-defense or defense of another "would have been harmless" error had the defendant "adequately preserved" the issue, which he had not. 629 A.2d at 503. We said, among other things, that defense counsel's "own repeated disavowal [at trial] of the proposed instructions which Cowan now claims [on appeal] the judge should have given itself suggests that the failure to give them was harmless." *Id.* at 504. No such disavowal was made in this case. Moreover, our conclusion that on the evidence presented the jury rationally could have opted for second degree murder leaves us unable to hold that denying it that option had no effect on the verdict. *Cf. Beck v. Alabama*, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980) (noting that "[w]hile we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule ... establishes the value to the defendant of this procedural safeguard").

Appellant is mistaken that because Sharp himself did not witness the stabbing, a finding by clear and convincing evidence that it occurred was impossible. If believed, Sharp was reporting an admission by appellant, a party opponent. *See, e.g., Gregory v. United States*, 393 A.2d 132, 137 (D.C.1978). Such an admission may constitute clear and convincing evidence at least when, as here, it was corroborated by Sharp's eyewitness testimony that appellant made good on his declared intent. Appellant is correct, however, that the trial judge made no express finding that Sharp was a reliable evidentiary conduit of appellant's admission. That finding was integral to the judge's responsibility to find the occurrence of the prior conduct by clear and convincing evidence.[7] Assuming appellant requests the finding at retrial, *see Daniels*, 613 A.2d at 347 n. 11, the trial judge must make it as a condition of admitting Sharp's second-hand report of the stabbing. At the same time, *Daniels* forecloses appellant's argument that the judge must *voir dire* Sharp and assess his credibility before the matter is submitted to the jury.[8] What *Daniels* requires is that at some point the judge independently make the required finding of whether or not the prior act occurred.

*Reversed and remanded.*

---

[7]. The finding is required even though, as the government suggests, the risk of a conviction by "propensity" in this case was reduced because the only practical significance of the stabbing was the *motive* it gave appellant to kill Iracks.

[8]. *Daniels* held that other crimes evidence may be admitted conditionally upon a proffer by the government, but went on to state:

> If the government [then] fails somehow to present at trial all the evidence that it had proffered or if the trial court finds the evidence in some part deficient because of credibility problems or otherwise, the trial court considers the evidentiary sufficiency and tailors the remedy according to the severity of the failure of proof. The trial court, in its discretion, may, for example, restrict the government's closing argument, give limiting instructions to the jury, or, where it deems there is a probability of "a miscarriage of justice," declare a mistrial.

*Daniels*, 613 A.2d at 347.