Johnie L. BROCKINGTON, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–587.

District of Columbia Court of Appeals.

Argued April 8, 1997.
Decided July 31, 1997.

Richard K. Gilbert, Washington, DC, appointed by the court, for appellant.

James E. Boasberg, Assistant United States Attorney, for appellee. Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman and Leanne S. Fallin, Assistant United States Attorneys, were on the brief for appellee.

Before FERREN, STEADMAN and RUIZ, Associate Judges.

STEADMAN, Associate Judge:

Appellant Johnie Brockington's principal contention on appeal is that the trial court erred by refusing to give a lesser included instruction for simple possession at his trial on the charged offense of possession with intent to distribute phencyclidine. Because the trial court's instructions on unanimity and joint and constructive possession and evidence that Brockington's codefendant possessed the drugs for personal use allowed the jury to fairly conclude that Brockington possessed the drugs for personal use, we conclude the trial court erred in not giving the simple possession instruction.

**I.**

At about 5:15 p.m. on December 7, 1994, Officer Melvin Watts, a twenty-four year veteran of the Metropolitan Police Department ("MPD"), and his partner set up an observation post in the 2200 block of 12th Street in Northwest Washington in response to citizen complaints about sales of marijuana and phencyclidine ("PCP"). Over the next hour or so Officer Watts noticed a recurring pattern where an individual would enter the 2200 block of 12th Street and approach two men standing near the mouth of an alley on the west side of the street. The individual would converse briefly with the men, produce what appeared to be money, and follow one or both of the men into the alley and out of the officer's view. A few seconds later the individual would emerge from the alley carrying a foil package raised to his nose as if he were smelling it.

Officer Watts concluded from his experience that the men were selling PCP. As a result he began to broadcast descriptions of the individual buyers to waiting arrest teams. Officer Watts was informed that, as a result of these broadcasts, two arrests were made that resulted in the recovery of drugs.

At about 6:30 p.m. that evening, a white late-model Subaru driven by the appellant Johnie Brockington entered the 2200 block of 12th Street from the south and parked on the east side of the street. Brockington's co-defendant, Alonza Smith, who was riding in the front passenger seat, got out of the Subaru and walked across the street toward the sellers who were standing in front of the alley. As he walked Smith looked at the sellers and gestured for them to follow him. Smith walked into the alley and the sellers followed. As one of the sellers was entering the alley the seller pulled money out of his front pants pocket. Approximately one minute later, Smith and the sellers emerged from the alley. The sellers resumed their positions at the mouth of the alley. Smith walked across the street and got into the passenger side of the Subaru. As he was crossing the street he appeared to be counting money. A few seconds later, the car pulled out of the block headed north. Officer Watts immediately broadcast a description of the Subaru and Smith to the arrest team and a "spotter team" a block away.[1]

The spotter team radioed back to Officer Watts that it had "picked up" the Subaru one block away at 12th and Florida Avenue and that it would follow the car to a better location for the arrest team to make a stop. The spotter team then radioed the arrest team that they had located the car and relayed its license plate number. The arrest team, traveling in an unmarked vehicle, located the Subaru at the intersection of Florida Avenue and 9th and U Streets, and called for assistance from a marked MPD cruiser. The arrest team followed the Subaru to the 700 block of S Street, N.W. where the marked cruiser turned on its lights and cut in front of the Subaru in order to stop it. The

1. Brockington contends that the trial court erred in determining that the police had reasonable suspicion to stop the Subaru based on Officer Watts' observations. Specifically, he argues that, based on *Smith v. United States*, 558 A.2d 312 (D.C.1989) (en banc) and its progeny, there was not articulable suspicion to stop the car based on Smith's actions because all Smith did was converse with persons suspected of being drug dealers. We think the *Smith* line of cases is distinguishable from the facts before us. Here Smith

drove up, got out of the car, and motioned for known drug sellers to follow him into the alley. One of the sellers pulled money from his pocket, the three stayed in the alley for only a moment, and Smith immediately left counting money. We conclude that the trial court did not err in finding reasonable suspicion under the circumstances. *See Funchess v. United States*, 677 A.2d 1019, 1020–22 (D.C.1996) (holding that probable cause to arrest existed where drug dealer handed appellant proceeds of drug sale).

unmarked car containing the arrest team stopped behind the Subaru, blocking it in.[2]

The arrest team got out of the unmarked vehicle and approached the Subaru from the rear. Officer Christopher Jackson, a member of the arrest team, was approaching the stopped Subaru from the rear on the passenger side when he noticed Smith sitting in the passenger seat reaching behind to the small of his back with his right hand in "a stuffing or grabbing motion." Officer Jackson ordered Smith to show his hands, and, when Smith refused, Officer Jackson pointed his gun at Smith and, with the assistance of another officer, removed Smith from the car. As soon as the car door was opened Officer Jackson smelled PCP. On the front passenger seat where Smith had been reaching Officer Jackson discovered a clear plastic bag containing five heat-sealed packages of a wet "greenish weed" substance that smelled strongly of PCP. As a result of this discovery, both Brockington and Smith were placed under arrest. A search incident to arrest revealed seven hundred and fifteen dollars in Brockington's front pants pocket and thirty six dollars in Smith's pocket. Brockington and Smith were subsequently transported to the Third District Police Station.

Meanwhile, Officer Jackson proceeded to search the interior of the Subaru. He attempted to open the glovebox with the ignition keys, but when it would not open, pried it open and discovered a Beretta nine millimeter handgun. He then opened the trunk using the keys where he detected a strong order of PCP. Because the smell of PCP made him feel ill, he closed the trunk and drove the Subaru to the Third District Police station to complete the search.

■ At the station Officer Jackson turned the Subaru over to Officer Ralph Nitz. While Officer Nitz was processing the Subaru, he asked Sergeant Jude Waddy to find out whether Brockington or Smith had keys to the vehicle. Waddy then went inside the station where Brockington was being booked and asked him if he had any keys to the car. Brockington gave Waddy a set of keys, and Waddy returned to the Subaru and gave the keys to Nitz. Nitz used these keys to open the trunk of the Subaru where he discovered a baby bag containing twelve heat sealed plastic packets of greenish weed with a strong PCP odor and three empty plastic heat-seals that contained residue of the weed substance. Officer Nitz also discovered various personal papers belonging to Brockington in the glove compartment and the passenger compartment of the Subaru.[3]

Brockington put on no evidence at trial but Smith testified in his own defense. Smith testified that Brockington gave him a ride to the 2200 block of 12th Street where he went into the alley to purchase PCP. He said he had paid $220 for the drugs and that on the way back to the car he was counting his change from $250. He also said that the PCP was for his personal use and that he

2. Brockington also contends that members of the arrest team lacked reasonable suspicion to stop the Subaru because they could not know that they had stopped the same white Subaru observed by Officer Watts given the proximity to rush hour and the heavily trafficked area near Howard University. We disagree. Here the Subaru was initially seen by the spotter team one block from the observation post and its license number was relayed to the arrest team which picked it up five blocks away. Under the circumstances we think that reasonable suspicion existed to stop the Subaru. *See Turner v. United States*, 623 A.2d 1170, 1173–74 (D.C.1993) (holding that reasonable suspicion existed to stop car in same area as broadcast description even when license plate did not match broadcast description).

3. Brockington also contends that Sergeant Waddy's inquiry as to whether he had keys to the Subaru constituted impermissible custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that, consequently, suppression of Brockington's "non-verbal statement" of producing the keys was required. Because this argument was not raised below we review only for plain error. Here there was no plain error because, assuming *arguendo* that a *Miranda* violation occurred, the keys would have been discovered during routine station house processing and were therefore admissible under the doctrine of inevitable discovery. *See Speight v. United States*, 671 A.2d 442, 454 (D.C.), *cert. denied*, — U.S. ——, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996) (holding that suppression of illegally seized car keys was not required because following legally justified arrest police would have inevitably discovered the keys). Brockington's argument that by turning over the keys he evidenced incriminating knowledge of their relation to the car does not negate this plain error analysis.

was buying in quantity so he did not have to go back into that area frequently.[4] Smith admitted that the five heat-seals found on the front seat were the drugs he had purchased but denied any knowledge of the twelve heat-seals in the trunk. He also testified that he did not tell Brockington that he was purchasing PCP. The parties also stipulated that on December 8, 1994, the day after his arrest, Smith had tested positive for PCP.

At the instruction conference the trial court agreed to give an instruction on simple possession as a lesser included offense of PWID for Smith. Brockington requested a special unanimity instruction and argued that he was also entitled to the lesser included simple possession instruction. The trial court agreed to give the special unanimity instruction but refused to give the lesser included instruction on possession despite Brockington's argument that he could be convicted for jointly and constructively possessing the front seat drugs which Smith had testified were for personal use. During closing argument the government argued specifically that Brockington was guilty of constructively possessing the PCP in the front seat because of its strong smell.

Following closing arguments, the trial court instructed the jury on the lesser included offense of possession only with respect to Smith. The court also instructed the jury on joint and constructive possession. The court's instruction on unanimity told the jury they could find Brockington guilty based solely on the PCP in the trunk, solely on the PCP in the front seat, or both, provided they were unanimous in concluding which drugs were the basis for their verdict. The jury was also instructed that it could convict Smith as an aider and abetter of Brockington, but was not instructed that Brockington could be convicted as an aider and abetter of Smith. Following deliberations, the jury convicted Brockington of PWID while armed, carrying a pistol without a license, possession of a prohibited weapon, possession of an unregistered firearm, and unlawful possession of ammunition. Smith was convicted only of the lesser included offense of possession of PCP. Brockington now appeals.

## II.

Brockington's primary contention on appeal is that the trial court erred in denying his request for an instruction on simple possession as a lesser included offense of PWID. "A defendant is entitled to a lesser-included offense instruction when (1) all elements of the lesser offense are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge." *Mitchell v. United States*, 595 A.2d 1010, 1011 (D.C.1991); *Lampkins v. United States*, 515 A.2d 428, 432 (D.C.1986). Since simple possession is a lesser included offense of PWID, the first requirement is met in this case. *Lampkins, supra*, 515 A.2d at 432. We turn then to the second requirement. As we recently explained,

[t]o justify a lesser included offense instruction, there must be evidence to support a finding of guilt on the lesser offense. In general, however, it is not the judge's function to assess the quality of that evidence, which the jury may chose to credit even if the judge believes it overborne by simply overwhelming evidence of guilt. The instruction must be given when the conclusion as to lesser offense is fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part. This requirement is a minimal one; it means any evidence however weak. That is to say, the weight of the evidence supporting the instruction is immaterial; as long as a jury could rationally convict on the lesser-included offense after crediting the evidence, the court must give the instruction no matter how inclined it might be to discount that evidence. At the same time, the court is not required to put the case to the jury on a basis that essentially indulges and even encourages speculations as to bizarre reconstruction.

*Shuler v. United States*, 677 A.2d 1014, 1017 (D.C.1996) (citations, footnote and emphasis omitted).

As the trial court recognized, there was sufficient evidence under the standard set

---

4. The government's expert had testified that the quantity of the drugs and the nature of their packaging suggested they were possessed for re-packaging and distribution, but acknowledged on cross-examination that a buyer could purchase PCP for personal use in these quantities.

forth in *Shuler* that Smith possessed the front seat PCP for personal use, including Smith's testimony to that effect and the stipulation that Smith was PCP positive the day after his arrest. Thus, the trial court correctly gave the simple possession instruction as to Smith. The trial court also instructed the jury that they could find Brockington and Smith guilty of possessing the front seat PCP, the back seat PCP, or both, and that Brockington and Smith could jointly and constructively possess both sets of drugs. The prosecutor specifically argued in closing that Brockington jointly and constructively possessed the PCP in the front seat because he had to have noticed its strong smell. Thus, the jury was allowed and urged to convict on the theory that Brockington and Smith jointly and constructively possessed the PCP in the front seat and there was evidence that Smith possessed that PCP for personal use. Under these circumstances we think it must be deemed "fairly inferable" that the nature of Brockington's possession of the front seat PCP was identical to that of his co-possessor, namely for personal use and not for distribution, and a jury could thus "rationally convict" Brockington on the lesser offense.[5]

Accordingly, the trial court erred by refusing to give the lesser included simple possession instruction with respect to Brockington. We therefore vacate Brockington's conviction for PWID while armed and remand for retrial on the charge of PWID while armed or for entry of a judgment of conviction of simple possession at the government's option.[6] *See Willis v. United States*, 692 A.2d 1380, 1382–83 (D.C.1997).

*So Ordered.*

---

**5.** This is not to say, of course, that such a conclusion is compelled. We speak only of what would be rationally possible. Two individuals could plainly co-possess the same item, but each for different purposes.

**6.** As Brockington concedes, his convictions for the various firearms charges stand.