Travis HANEY, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CF–150.

District of Columbia Court of Appeals.

Argued Feb. 27, 2012.

Decided April 26, 2012.

Alec Karakatsanis, Public Defender Service, with whom James Klein and Alice Wang, Public Defender Service, were on the brief, for appellant.

Brandon S. Long, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosman,

and Jennifer Kerkhoff, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and FERREN, Senior Judge.

FERREN, Senior Judge:

Travis Haney was charged with various assault and weapons offenses attributable to the shooting of Phyllis Walters. Later, he was charged with obstruction of justice and threats arising from his conduct during a detention hearing. After a jury trial, he was convicted of the assault and weapons offenses but acquitted of obstruction and threats. On appeal, Haney contends that the trial court erred by refusing to sever, for separate trials, the charges arising from the shooting from those related to his conduct in court. In addition, he argues that his two convictions for possession of a firearm during a crime of violence (PFCV)[1] should merge. We affirm all convictions save for a remand to vacate one count of PFCV.

## I.

According to the government's evidence, on March 10, 2008, Haney approached Walters outside the Friendly Food Market at 1399 Half Street, S.W., and shot her nine times at close range. The evidence suggested that Haney shot Walters because she had assisted the police by identifying a shooter in another case. For the shooting in this case, the government charged Haney with (among other offenses) two counts of PFCV based on one count of assault with intent to kill while armed[2] and one count of aggravated assault while armed.[3]

On April 7, 2008, Haney was brought to a detention hearing in Superior Court, where Detective Stanley Greene, the lead investigator, took the stand to summarize the government's case. He had obtained an identification of Haney as the shooter from Walters, the victim, who picked him out from a nine-person photo array when Greene visited her in the hospital—whereupon Greene had arrested Haney.

During a bench conference, while Detective Greene stood just outside the witness box, Haney—restrained with handcuffs but showing a smug demeanor—clasped his hands together, pointed his index fingers at Detective Greene, and moved his thumbs up and down mimicking a gun. During a second bench conference, when Detective Greene was seated in the courtroom audience, Haney turned around and, while looking at the detective, mouthed the words, "I'm going to fuck you up." For this conduct, the government charged Haney with obstructing justice[4] and threatening to kidnap/injure a person.[5]

Before trial, Haney moved to sever the charges arising from his conduct at the detention hearing from those related to the shooting and thus requested separate trials. The trial judge denied severance on the ground that the evidence in each set of charges would be admissible in the trial of the other—a "mutual admissibility" ruling. More specifically, as defense counsel conceded, the evidence from the Walters shooting would be admissible in a separate trial for obstruction and threats to provide context for those charges. And, ruled the

1. D.C.Code § 22–4504(b) (2001 & Supp. 2011).

2. D.C.Code §§ 22–401, –4502 (2001).

3. D.C.Code §§ 22–404.01(a), –4502 (2001).

4. D.C.Code § 22–722(a)(2)(A) (2001 & Supp. 2011).

5. D.C.Code § 22–1810 (2001).

judge (over defense objection), the evidence of obstruction and threats would be admissible in a separate trial of the Walters shooting to show "consciousness of guilt."

Haney's first trial ended in a mistrial. At the end of the second trial, the judge instructed the jury to consider each count separately and not to allow conviction on one count to influence its decision on others. The jury found Haney guilty of all charges except obstructing justice and threatening to kidnap/injure a person.[6]

## II.

■ No one disputes that the charges of obstructing justice and threats to Detective Greene were properly joined with those arising from the shooting of Walters,[7] because the alleged obstruction and threats were a "sequel" to the underlying offenses.[8] When, however, the defendant "is prejudiced by a joinder of offenses, the court may order ... separate trials of counts," [9] with the decision on severance "left to the discretion of the trial court," a decision we will disturb "only if there has

been an abuse of discretion." [10] We have noted that joinder, as such, "presents no prejudice to the defendant if evidence of the crimes charged would be admissible in a separate trial for the other offense." [11] But that does not end the inquiry. We have made clear that in exercising discretion under Super. Ct.Crim. R. 14, "the trial judge must balance the possibility of prejudice to the defendant[ ] against the legitimate probative force of the evidence and the interest in judicial economy." [12] Because Haney conceded at trial that evidence from the Walters shooting would be admissible in a separate trial for obstruction and threats, our focus is limited to whether the evidence of obstruction and threats was properly admissible in a separate trial for the shooting.

## III.

■ In denying the requested severance, the trial court followed a general understanding: "Evidence that a defendant made threats to witnesses against him in a criminal proceeding is relevant to show the defendant's consciousness of

---

**6.** The jury found Haney guilty on one count of assault with intent to kill while armed, D.C.Code §§ 22–401, –4502, one count of aggravated assault while armed, D.C.Code §§ 22–404.01, –4502, two counts of PFCV, D.C.Code § 22–4504(b), one count of carrying a pistol without a license (CPWL), D.C.Code § 22–4504(a) (2001 & Supp.2011), one count of possession of an unregistered firearm, D.C.Code § 7–2502.01 (2001 & Supp.2011), and one count of unlawful possession of ammunition, D.C.Code § 7–2506.01(3) (2001 & Supp.2011).

Haney was sentenced to prison terms of 180 months followed by five years of supervised release on the assault with intent to kill while armed charge, 120 months and five years of supervised release on the aggravated assault while armed charge, 60 months and three years of supervised release on each PFCV charge, 24 months and three years of supervised release on the CPWL charge, 12 months on the possession of an unregistered

firearm charge, and 12 months on the unlawful possession of ammunition charge.

**7.** Super. Ct.Crim. R. 8(a) provides: "Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are ... based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan."

**8.** *Sams v. United States*, 721 A.2d 945, 954 (D.C.1998), cert. denied, 528 U.S. 1135, 120 S.Ct. 977, 145 L.Ed.2d 928 (2000).

**9.** Super. Ct.Crim. R. 14.

**10.** *Bittle v. United States*, 410 A.2d 1383, 1386 (D.C.1980) (citation omitted).

**11.** *Id.*

**12.** *Id.*

guilt."[13] This rule of relevance is well established.[14] For example, we have sustained admission of a defendant's threats to an eyewitness to the crime;[15] a defendant's threats to a so-called earwitness, who heard him make inculpatory statements;[16] and threats on behalf of a defendant by spectators at a trial against a testifying witness.[17]

We have stressed, however, that admissibility of such evidence has its limits, for it has "great potential for prejudice to the accused."[18] Accordingly, although relevant evidence "should be excluded only when 'its probative value is substantially outweighed by the danger of unfair prejudice,' "[19] this court and others have been alert to perceive serious prejudice from threats evidence when the context does not clearly warrant its admission.[20] It therefore will be useful, before addressing the facts in this case, to identify case law that helps set the limits governing admission of threats evidence to establish consciousness of guilt.

In *Ebron v. United States*,[21] for exam-

13. *Ebron v. United States*, 838 A.2d 1140, 1148 (D.C.2003) (citation omitted), *cert. denied*, 543 U.S. 939, 125 S.Ct. 347, 160 L.Ed.2d 247 (2004).

14. *See, e.g., Burgess v. United States*, 786 A.2d 561, 569 (D.C.2001) ("Threats, bribery, flight, and similar post-crime conduct have repeatedly been held to evince 'consciousness of guilt' and thus constitute 'admissions by conduct.' ") (citing *Proctor v. United States*, 381 A.2d 249, 251 (D.C.1977)), *cert. denied*, 537 U.S. 854, 123 S.Ct. 210, 154 L.Ed.2d 88 (2002); *United States v. Guerrero*, 803 F.2d 783 (3d Cir.1986) (admitting evidence of threats by defendant against co-conspirators who had entered into cooperation agreements with government to testify against him at trial for conspiracy to distribute cocaine).

15. *See Byrd v. United States*, 502 A.2d 451, 452 (D.C.1985) (admitting evidence of threats to eyewitness to robbery); *(John) Smith v. United States*, 312 A.2d 781, 783 (D.C.1973) (same); *Payne v. United States*, 516 A.2d 484, 487, 491 n. 14 (D.C.1986) (per curiam) (same); *Ebron*, 838 A.2d at 1145–46 (threatening gestures to eyewitness who saw preparations to commit murder); *McCoy v. United States*, 760 A.2d 164, 170, 179 (D.C.2000) (threatening letter written to witness who saw murder), *cert. denied*, 534 U.S. 900, 122 S.Ct. 227, 151 L.Ed.2d 163 (2001).

16. *See Byrd*, 502 A.2d at 452 (in course of threatening witness, defendant admitted committing charged offense); *(John) Smith*, 312 A.2d at 784 (defendant implicitly admitted charged offense while threatening witness); *Hammond v. United States*, 880 A.2d 1066, 1078, 1096 (D.C.2005) (defendant threatened witness who overheard inculpatory state- ments made by defendant), *abrogated in part on other grounds by Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *McCoy*, 760 A.2d at 170, 179 (threatening letter written to witness to whom defendant had said he was going to commit a murder). *Cf. Crutchfield v. United States*, 779 A.2d 307, 314, 323 (2001) (before her own murder, witness reported hearing appellant make inculpatory statements regarding earlier triple murder).

17. *See Ebron*, 838 A.2d at 1151–53.

18. *Id.* at 1148.

19. *Id.* (quoting *(William) Johnson v. United States*, 683 A.2d 1087, 1099 (D.C.1996) (en banc) (adopting and quoting FED.R.EVID. 403), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997)). FED.R.EVID. 403 provides in relevant part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . .

20. We have said that evidence of another crime will be admissible to help prove an offense "where such evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context." *(William) Johnson*, 683 A.2d at 1098. The first and third criteria are applicable here.

21. 838 A.2d 1140 (D.C.2003), *cert. denied*, 543 U.S. 939, 125 S.Ct. 347, 160 L.Ed.2d 247 (2004).

ple, a case in which two spectators at the trial made throat-slashing gestures during the testimony of a key witness, we reversed the conviction of one appellant for lack of a showing that he "had any link to the spectators or their conduct other than having been seen in the neighborhood together with them" (while affirming the conviction of the other appellant, who had "procured or authorized the spectators").[22] And in *United States v. Copeland*,[23] balancing probative value against prejudicial effect under FED.R.EVID. 403,[24] the U.S. Court of Appeals for the Sixth Circuit concluded that the trial court abused its discretion in admitting evidence from fellow jailmates that the defendants had intended "to pay someone $500 to 'get,' that is, harm" the prosecutor.[25] The court reasoned that although the reported threats had "some probative value as to the defendants' consciousness of guilt," the "lack of

specificity linking the statements to the charged conduct"—a conspiracy to distribute a controlled substance and possession of a firearm by a felon—permitted "only a weak inference" of guilt consciousness; there were "many conceivable reasons," stressed the court, "why a defendant awaiting trial would threaten to harm the prosecutor, including simple frustration with being wrongly accused."[26] The probative value of the threat, therefore, was "substantially outweighed by the danger of unfair prejudice" from a likely, though impermissible, inference by the jury that the defendants possessed "a violent nature and had previously served time in prison."[27]

This court has also made clear, although not in the context of threats evidence, that the respective nature of the charged offenses, otherwise properly joined, can require severance because of unfair prejudice. For example, in *Bright v. United States*,[28] we reversed the trial court's re-

---

**22.** *Id.* at 1149–52. *Cf. Mercer v. United States*, 724 A.2d 1176, 1186 (D.C.1999) (statement by eyewitness to murder, elicited by prosecution and indicating fear of testifying "[b]ecause I could leave here today and y'all might never see me again," should have been stricken as unfairly prejudicial, absent evidence of any threat from defendant). Also in *Mercer*, after reviewing substantiated threats evidence, we reversed the conviction of one co-defendant because of a clash of tactics between two of the three co-defendants. One moved to sever his trial to avoid prejudice from the decision of a co-defendant's counsel to cross-examine an eyewitness to the murder about her entry into the witness protection program because of a threat to her life. The court denied the motion in favor of the co-defendant's desire to disclose the witness's protection as evidence that she was on the government's payroll—a disclosure we deemed unfairly prejudicial to the co-defendant who sought severance to avoid mention of the threats evidence.

**23.** 321 F.3d 582, 597 (6th Cir.2003).

**24.** *See supra* note 19.

**25.** *Copeland*, 321 F.3d at 597. In *Copeland*, after finding an abuse of discretion in admitting the threats evidence, the court affirmed

the conviction because it found the evidence harmless. It would appear, therefore, that in Sixth Circuit jurisprudence, "abuse of discretion" means no more than "error," leaving room for a second finding as to its harm. In this jurisdiction, however, we understand "abuse of discretion" to include not only error but also a finding that the error is "of a magnitude to require reversal." (*James*) *Johnson v. United States*, 398 A.2d 354, 366–67 (D.C.1979). In the present case, in finding no abuse of discretion, we have limited the analysis of harm to whether prejudice from Haney's actions at the detention hearing substantially outweighed the probative value of those actions alone, in contrast with an approach that, as in *Copeland*, would have weighed the prejudice from Haney's courtroom actions against the probative value of *all* the government's evidence, including the identification of the shooter.

**26.** *Id.* at 598.

**27.** *Id.*

**28.** 698 A.2d 450 (D.C.1997).

fusal to sever two counts of first-degree murder from a joint trial with an ammunition charge. The murder evidence, we said, created an "extreme risk of [impermissible] prejudice"[29] that was likely to "overwhelm" the jury's consideration of the lesser, ammunition prosecution.[30] On the other hand, in *Crutchfield v. United States*,[31] a case of a triple murder prosecuted jointly with a charge that the defendant had subsequently murdered a witness to the first murders, we rejected a challenge to the trial judge's denial of a motion to sever the second murder charge. We agreed that evidence of the second murder demonstrated "appellant's 'consciousness of guilt' in the [earlier], triple slaying," and that unlike the impact of the murder counts on the ammunition charge in *Bright*, the impact of the witness's murder on the triple murder charges was not seriously prejudicial; there was a parity among the murders, each as outrageous as the others, and thus, we reasoned, the evidence of the witness's murder would not have prejudiced the jury into concluding, more than it otherwise would, that the appellant had a proclivity for violence.[32]

■ From these examples, it is clear that pursuant to FED.R.EVID. 403,[33] as applied in the foregoing case law, the evidence of alleged threats will be admissible if that evidence (1) can be reasonably iden- tified as a threat,[34] (2) confirms a direct link between the accused and the crime charged,[35] and (3) can be reasonably perceived to show consciousness of guilt;[36] and (4) given the nature of the evidence in context, the court determines that the prejudicial effect of its admission will not substantially outweigh its probative value.[37]

## IV.

We begin with Haney's arguments challenging the probative value of the threats and obstruction evidence.

### A.

■ We consider, first, Haney's argument that he did not make threats against Detective Greene. He insists that he was not actually trying to interfere with the trial, claiming that his admittedly "hostile gesture" did not refer to Detective Greene's potential testimony. It was, according to his reply brief, no more than "a merely menacing, yet irrelevant and unconnected, statement."[38] To establish his point, he emphasizes that he had repeatedly told Detective Greene during the investigation that he was innocent of the shooting, and that the detective acknowledged at trial that he did not take Haney's gesture mimicking a gun as a personal offense.

29. *Id.* at 456.

30. *Crutchfield v. United States*, 779 A.2d 307, 324 (2001) (citing *Bright*, 698 A.2d at 456).

31. 779 A.2d 307 (D.C.2001).

32. *Id.* at 323–24.

33. *Supra* note 19.

34. *See Mercer*, 724 A.2d at 1186 (prosecution must have "a well reasoned suspicion that . . . such threat had occurred").

35. *See Ebron*, 838 A.2d at 1150 (requiring that threat be issued by or on behalf of defendant);

*Copeland*, 321 F.3d at 598 (requiring link between threat and charged criminal conduct).

36. *See United States v. Pina*, 844 F.2d 1, 9 (1st Cir.1988) (threats not probative of consciousness of guilt where threats were made after witness had already testified).

37. *United States v. Guerrero*, 803 F.2d 783, 786 (3d Cir.1986) ("[T]o be considered is the prejudicial nature of the threat evidence.").

38. *Id.* at 786–87.

While it is possible that an innocent defendant could make hostile gestures against a government witness out of "simple frustration with being wrongly accused,"[39] it would be for the jury, not this court, to determine how such actions, commonly associated with consciousness of guilt, should be taken. Furthermore, although Detective Greene may not have taken Haney's first, gun-mimicking gesture personally, Greene's testimony about the second incident (when Haney mouthed the words, "I'm going to fuck you up") was not dismissive. As to that verbiage, the detective testified that Haney was "[f]ocused on me," permitting an inference that Greene did take this threat personally.

In any event, Haney's own words about his innocence and his intentions, coupled with the detective's subjective perceptions about those intentions, are not determinative. The issue, rather, is whether Haney's actions can reasonably be interpreted[40] as a threat and as obstruction, such that a jury could reasonably rely upon this evidence in determining whether Haney was guilty beyond a reasonable doubt of the crimes charged: "knowingly" using a "communication" to "influence, intimidate, or impede a witness or officer" (obstruction)[41] or of "threaten[ing] . . . to injure the person of another" (threats).[42] We cannot say that Haney's two menacing gestures, coupled with his mouthed threat, were too benign to present a jury question on either charge.

But, replies Haney, he was in custody—at the time, in handcuffs. Whatever the perception of his intentions, he says, he could not have prevented Detective Greene from testifying and thus cannot be perceived to have made a criminal threat. Not necessarily so. The jury could have reasonably inferred that Haney's actions in court could have impacted the detective's testimony, if only out of a reasonable, while unexpressed, fear that Haney could rely on outside help to back up his gestures.[43] It would not be unreasonable for the jury to infer that confederates could have engaged in vengeful acts against the detective before, or even after, Haney's trial.

Haney uses Detective Greene's testimony that he did not take Haney's first, gun-mimicking gesture personally to support still another argument as to why he had not been making threats. According to Haney's reply brief, Greene's interrogation had stirred up in Haney so much "extreme hostility" toward Greene before the detention hearing—indeed, there was enough evidence that Haney had such "a strong, prior dislike of law enforcement regardless of Detective Greene's role as a government witness"—that his hostility surely reflected that general animus, not a specific effort to affect the detective's trial testimony. Again, that interpretation is for the jury, not the trial court, to decide, given the reasonable, alternative inference that his gestures telegraphed a personal threat. Indeed, if Haney admittedly felt generally hostile to law enforcement before his arrest and trial in this case, the jury just as reasonably could have inferred that Ha-

---

**39.** *Copeland,* 321 F.3d at 598.

**40.** *Mercer,* 724 A.2d at 1186 (admission of threat must be based on "evidence [sufficient] to form a well reasoned suspicion" that "threat had occurred").

**41.** *Supra* note 4.

**42.** *Supra* note 5.

**43.** *See Ebron,* 838 A.2d at 1151–52 (defendant Ebron, while on trial for murder, communicated with courtroom spectators to issue threat to witness); *Copeland,* 321 F.3d at 597 (government witness testified that defendants, while in county jail, sought to hire someone to harm prosecutor).

ney, reacting to the proverbial last straw, was intending to use whatever outside connections he had to make good on his menacing actions directed at the detective who had interrogated him endlessly and was about to testify for the government.

## B.

We turn to the second criterion for admissible threats evidence: confirmation of a direct link between the accused and the crime for which he is on trial. We have noted that in *Ebron*, where two spectators were making throat-slashing gestures to a testifying witness, we could find no record basis linking those spectators to one of the co-defendants, and thus we reversed his conviction for admission of that "highly prejudicial" threats evidence.[44] And in *Copeland*, where jailmates offered evidence that the defendants intended to pay someone $500 to harm the prosecutor, the U.S. Court of Appeals for the Sixth Circuit found "lack of specificity" linking defendants' actions to the charged criminal conduct, given the variety of reasons "why a defendant awaiting trial would threaten to harm the prosecutor."[45] Thus, in one case the threats reflected no direct link between the defendant and the crime because he was not responsible for the threats. In the other, there was no direct link between the defendants and the crime because the threats were just as likely attributable to other motives and events.

Haney argues that, like the intended attack on the prosecutor in *Copeland*, the evidence of Haney's intense animus against law enforcement, unrelated to the assault on Walters, neutralizes any reasonable inference of a direct link to the crime on trial. We cannot agree. Haney's threats directed at the lead detective at Haney's detention hearing, before trial of the crime at which the detective was going to testify against him, are assuredly strong evidence of a direct link between Haney and the charged crime. We are focusing now on probative value, not yet on prejudice. Thus, to eliminate probative value, the evidence that would erase the direct link manifest here would have to reflect animus and demonstrate motive that clearly transcended—and thus excluded—any motive related to the Walter shooting. That possibility is better conceptualized within our discussion that follows: guilt consciousness.

## C.

In his brief, Haney cites language from *Crutchfield* in stressing that hostile behavior toward a government witness will be inadmissible to show "consciousness of guilt" unless there is "strong circumstantial evidence of his motive to prevent" the witness from testifying against the defendant.[46] Adding language from *Ebron*, he argues that the kind of strong motive evidence required for admission at trial must be "highly probative of his own consciousness of guilt."[47] Such evidence, he says, is lacking here. We do not want to quibble too vigorously with counsel's choice of words, but we must note that the adjectives used, "strong" and "highly probative," are not minimum criteria for admissible evidence prescribed by this court; rather, we used these words to describe the high quality of evidence that happened

---

44. *Ebron*, 838 A.2d at 1150. *But cf. United States v. Hayden*, 85 F.3d 153, 158–59 (4th Cir.1996) (upholding admission of threatening letter and threatening phone call because recipient of letter was able to identify defendant as sender from letter's contents and recipient of phone call recognized defendant's voice).

45. *Copeland*, 321 F.3d at 598.

46. *Crutchfield v. United States*, 779 A.2d 307, 323 (D.C.2001).

47. *Ebron*, 838 A.2d at 1152–53.

to be present in those particular cases,[48] satisfying the probative/prejudice test for admissibility under FED.R.EVID. 403, as adopted by our en banc court.[49]

Haney justifies his choice of words more fundamentally, however, by arguing that the paradigm cases that justify admission of threats as evidence of guilt consciousness are those in which the defendant himself (or the defendant's demonstrated agent) has directly threatened an eyewitness or earwitness to the crime. He notes that the cases we have cited for admission of threats evidence have fit that paradigm model;[50] that those cited for reversal have not;[51] and thus that, for consistency with the case law, we must conclude that his actions at issue here did not reflect consciousness of guilt because, as emphasized in his brief, he did not threaten "an *actual* [eye or ear] *witness to the offense.*" It follows, he argues, that the charged threats and obstruction of justice, directed merely at an investigating detective who did not witness the crime are inadmissible as reflections of guilt.

This argument is unpersuasive. While we of course acknowledge that evidence of guilt consciousness must be probative to the point of outweighing prejudicial impact, we do not accept Haney's contention that admission of such evidence must be limited to particular categories, such as the two paradigm types he has recognized. We find nothing in FED.R.EVID. 403 or in relevant case law that would limit admission of threats evidence to eyewitnesses to crime and earwitness to confessions, to the exclusion of threats to other government witnesses.

In his reply brief, Haney recognizes that "Detective Greene may have played a key role in the *investigation*" but contends that the threats against him were inadmissible because "he was not a key *witness* at trial." Haney offers no principled explanation, however, as to why a defendant's threat made to a key investigator is so much less probative of guilt consciousness—to the point of requiring evidentiary exclusion—than a threat made to a key witness to the crime. Under appellant's limited view of admissible evidence, highly probative threats made to certain categories of witnesses in addition to police officers, such as forensic examiners who typically are not eyewitness and do not overhear confessions, would have to be excluded even though they may present important—even determinative—evidence, such as DNA results. That view eludes us.

Although Detective Greene did not witness the shooting, he was not a fungible witness; he conducted a significant part of the investigation and was the only witness to the identification procedure when the victim picked out Haney from the photo array. A successful effort to intimidate the detective, therefore, could have benefitted Haney. His two courtroom actions directed against Detective Greene, including an express verbal threat, cannot be brushed aside summarily as irrelevant here.

Haney counters by asserting that he knew Detective Greene had no personal knowledge of the crime, and thus that Haney would have had no reason to believe that Greene's "removal" from the trial "would have had a significant effect upon the government's success at trial" of the Walters shooting.[52] We cannot take

48. *Supra* notes 46 & 47.

49. *Supra* note 19.

50. *Supra* notes 15 & 16.

51. *Supra* notes 21 & 23.

52. *Copeland,* 321 F.3d at 598.

seriously, however, an argument that would have us reject evidence typically manifesting guilt consciousness simply because the defendant's motive is governed by his own asserted knowledge of what is, and is not, important to the prosecution's case.

This brings us back, finally, to Haney's arguments based on his hostile dealings with law enforcement that antedated the detention hearing, including incidents with Detective Greene. Haney argues that his courtroom gestures have insufficient probative value because he harbored hostile feelings toward Detective Greene and law enforcement in general well before the detention hearing, as evidenced by his tattoo that said "Kill All Ratz," as well as his contentious hour-long interrogation by Detective Greene at the end of which he called Greene a "bitch ass." We have rejected his insistence that his animus against the police was so strong that we should characterize his actions toward Detective Greene at the detention hearing as manifestations of a general hatred toward law enforcement—not as a threat to intimidate the detective personally, directly linked to the Walters shooting. We also must reject Haney's contention that this preexisting general hostility somehow removes his behavior at the detention hearing from the realm of evidence of conscious guilt about Walters. We cannot say, as a matter of law, that a jury could not perceive the evidence as the kind of obstruction and threats charged.

Haney's arguments attacking the admissibility of the threats and obstruction evidence in the trial of the Walters shooting can be summarized easily: the alleged threats were too weak, the link to the shooting was too weak, and the inference of conscious guilt was too weak—especially when taken together—to have probative value sufficient for admission. We agree that the threats and obstruction evidence were not as powerful, the link not as direct, and the consciousness of guilt not as explicit as in the paradigm situations— threats to kill eyewitnesses and earwitnesses—that Haney posits. But for reasons we have explained, the evidence at issue is probative enough for admissibility under all three of these criteria, leaving the conclusive question under Fed.R.Evid. 403: whether the probative value of the threats evidence at issue here "is *substantially* outweighed by the danger of unfair prejudice." [Emphasis added.]

**V.**

■■■ Our en banc court, in adopting the federal rule, discussed the word "substantially" at some length. We noted in *Johnson* that, at the time our opinion was written (1996), the rule had been adopted by at least forty states, only one of which, Alaska, had removed "substantially" from the text.[53] We also observed that the federal rulemakers had not provided a history underlying inclusion of the word, but we surmised that, because of its inclusion, "it is reasonable to anticipate that trial judges will exercise their discretion to admit such evidence in some instances in which they otherwise might not do so."[54] We then concluded that, "in connection with the admission of evidence generally when it is challenged as 'unfairly prejudicial,'" our retaining the word "substantially" would "further the policy of admitting as much relevant evidence as it is reasonable and fair to include," as well as "gain for this jurisdiction the advantage that uniformity

---

53. (*William*) *Johnson v. United States*, 683 A.2d 1087, 1099–1100 (D.C.1996) (en banc), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997).

54. *Id.* at 1100 (citation omitted).

with the federal rule and the vast majority of state rules affords for interpretation and application."[55] We later clarified in *Mercer* that "unfair prejudice" refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[56] Our discussions in *Johnson* and *Mercer* do not afford detailed guidance, but we are satisfied with an understanding that, if probative evidence is to be excluded because it is "substantially outweighed by the danger of unfair prejudice," the reason for exclusion must be convincing and the prejudice probable, not merely possible or speculative.

In our en banc decision in *Johnson*, we observed that the probative/prejudice analysis is "quintessentially a discretionary function of the trial court, and we owe a great deal of deference to its decision."[57] Haney protests, first, that the trial court abused its discretion by failing, fundamentally, to weigh the probative value of the threats and obstruction evidence against its prejudicial impact. To the contrary, the record reflects that Haney's trial counsel argued that the threats evidence "would be unfairly prejudicial," and that the trial judge replied, "I'm aware of the argument, that's why I wanted to look at the cases and think about it a little more." The judge then took a forty-one minute recess, returned to the bench and said, "I've taken a look at the cases again and given further thought to your motion.... I am going to deny your motion for severance." The judge ruled that the jury "could find that [the threats were] reflective of a consciousness of guilt." Contrary to Haney's contention, therefore, the record makes clear that the trial judge not only evaluated the probative value of the evidence but also gave significant consideration to Haney's concern about prejudice.

This brings us to the fourth and final factor identified earlier: the nature of the evidence—relevant to Rule 403 admissibility in the context of a Rule 14 severance motion. Haney argues that the evidence of threats and obstruction was unfairly prejudicial because it had a "sensationalistic, emotional character" and painted him as a "bad person." In the context of the facts here and applicable case law, that argument is unavailing. First the law. Recall that in *Bright* we reversed for failure to sever two counts of murder from a joint trial with an ammunition charge because the murder evidence was likely, prejudicially, to "overwhelm" the jury's consideration of the ammunition prosecution.[58] However, in *Crutchfield*, to the contrary, we declined to order severance of a murder charge from a joint trial with a triple murder prosecution, noting "the parity of the two crimes" and reasoning that they were "sufficiently comparable" such that the jury would not have been likely to reach conclusions about the defendant's " 'proclivity for violence before it was satisfied' beyond a reasonable doubt on the triple murder counts."[59]

In the present case, we have a *Bright* situation in reverse; the far lesser

---

**55.** *Id.*

**56.** *Mercer,* 724 A.2d at 1184 (citing Fed. R.Evid. 403 advisory committee's note).

**57.** (*William* ) *Johnson,* 683 A.2d at 1095.

**58.** 698 A.2d at 456. *See also United States v. McManaman,* 606 F.2d 919, 926 (10th Cir. 1979) (taped conversation of planned murders too prejudicial to be admitted under Rule 403 where defendant had been charged only with drug offenses); *United States v. Weir,* 575 F.2d 668, 671 (8th Cir.1978) (threats to kill law enforcement agents too prejudicial where defendants had been charged with armed bank robbery).

**59.** *Crutchfield,* 779 A.2d at 324 (quoting (*William* ) *Johnson,* 683 A.2d at 1095).

charge—threats and obstruction—was unlikely to have affected the jury's consideration of the major crime, the Walters shooting. Haney's threats and obstructive conduct at the detention hearing were minor when compared with the initially charged offense: an assault with intent to kill by shooting the victim nine times at point-blank range. Because the evidence of threats and of obstruction was not nearly as heinous or sensationalist as the evidence the jury received in relation to the charged offense of assault with intent to kill, we cannot say that admitting the evidence of Haney's behavior in court toward Detective Greene presented an undue risk of prejudice. Indeed, if denial of severance in *Crutchfield* was attributable to a parity between the two joined crimes, then denial here should follow *a fortiori*.

We therefore have no reason to disagree with the trial court's exercise of discretion. Furthermore, any prejudice Haney may have suffered was mitigated by the trial court's instruction that the jury should consider each charge separately and not permit guilt on one count to influence its decision on another count.[60] Moreover, we cannot overlook that the jury acquitted Haney on the threats and obstruction charges attributable to his conduct in court, a result that shows the jury was able to keep the charges separate and distinct.[61] In sum, no abuse of discretion occurred here; the probative value of the threats and obstruction evidence was not, in the words of Fed.R.Evid. 403 "substantially outweighed by the danger of unfair prejudice."

## VI.

 Haney was convicted on two counts of PFCV arising from Walters' shooting. We have held that possession of a single weapon during a single violent act may not give rise to multiple PFCV convictions.[62] We therefore must order vacation of one of Haney's PFCV convictions.

\* \* \* \* \* \*

For the foregoing reasons the judgment on appeal is hereby affirmed, except for a remand of the case for the trial court to vacate one of Haney's convictions for possession of a firearm during a crime of violence.

*So ordered.*

---

**60.** *See Howerton v. United States*, 964 A.2d 1282, 1292 (D.C.2009) ("[T]he trial court explicitly instructed the jury to consider each count separately, thereby reducing any prejudicial effect of joinder.").

**61.** *See Winestock v. United States*, 429 A.2d 519, 527 n. 11 (D.C.1981) ("That appellant was acquitted of [some charges] ... suggests that the jurors were in fact able to keep the allegations separate and distinct.").

**62.** *See Nixon v. United States*, 730 A.2d 145, 153 (D.C.1999), *cert. denied*, 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999).