*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 14-CF-852 and 14-CF-869

SHANE TYNIQUE EVANS AND EBONY RUFFIN, APPELLANTS,

V.

UNITED STATES, APPELLEE.

06/15/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court of the
District of Columbia
(CF2-4016-13 and CF2-458-13)

(Hon. Anita Josey-Herring, Trial Judge)

(Argued November 3, 2016                    Decided June 15, 2017)

*Benjamin Brooks* for appellant Shane Tynique Evans.

*Donald L. Dworsky* for appellant Ebony Ruffin.

*Nicholas Coleman*, Assistant United States Attorney, for appellee. *Channing D. Phillips*, United States Attorney, with whom *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Kara Traster*, and *Jay Apperson*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, *Associate Judge*, and WASHINGTON and NEBEKER, *Senior Judges*.[*]

---

[*]     Judge Washington was Chief Judge at the time of argument. His status changed to Senior Judge on March 20, 2017.

NEBEKER, *Senior Judge*: After a jury trial, appellants—Ebony Ruffin and Shane Evans—were convicted of two counts of assault with a deadly weapon (hammer and taser),[1] assault with a significant bodily injury,[2] assault with intent to commit robbery while armed,[3] and armed robbery.[4] Additionally, Evans was convicted of obstruction of justice[5] and threatening to injure.[6] Ruffin raises two sufficiency of the evidence arguments pertaining to identification evidence and proof of knowledge for the aiding and abetting charge. Evans raises five arguments including failure to grant trial counsel's motion to sever, a sufficiency of the evidence argument, admission of hearsay statements, prejudicial effect of the use of a video clip as evidence and prosecutorial error regarding the use of prejudicial rhetoric in the government's opening and closing statements. Finding no reversible error, we affirm the appellants' convictions.

---

[1] D.C. Code § 22-402 (2001). Evans was convicted of aiding and abetting this charge.

[2] D.C. Code § 22-404 (a)(2) (2001).

[3] D.C. Code §§ 22-401, -4502 (2001).

[4] D.C. Code §§ 22-2801, -451 (2001). Ruffin was convicted of aiding and abetting this charge.

[5] D.C. Code § 22-722 (a)(6) (2001).

[6] D.C. Code § 22-1810 (2001).

## I.

On September 9, 2012, the victim, Lakesha Bell, was attacked by three women: appellants Evans and Ruffin, and a third women, Nichelle Rogers. At that time, Bell was the girlfriend of an individual named Purnell Hawkins and was seven months pregnant with Hawkins's child. Evans was Hawkins's former girlfriend. Prior to the day of the incident, in the summer of 2012, Bell visited the D.C. Superior Court to observe Hawkins's court appearance on an unrelated matter. Evans also attended the court proceedings and was present in the courtroom. At one point during the proceeding, Hawkins handed a note to his lawyer to pass onto Bell. As Bell started reading the note, Evans attempted to steal it from her hand. Bell pulled the note away and stated, "This is not for you."

At some point thereafter, from jail, Hawkins called Bell, who informed Hawkins about the courtroom letter interaction with Evans. As a result, Hawkins arranged for a joint phone call including himself, Bell and Evans. At one point during this joint conversation, Evans exclaimed, regarding Bell, "F*** her and that baby."

## A. The Assault Charges

Weeks after the interaction at the D.C. Superior Court, on September 9, 2012, Bell was walking home to her mother's house at approximately 6:00 PM—while it was still daylight. A woman, later identified as Evans, stepped out of a green van in front of Bell. Bell inquired, "What is this for?" Evans responded, "You know what this is for" and subsequently punched Bell in the stomach. Evans further stated, "You took my dude and you're not having this baby today." For some time thereafter, Evans and Bell fought amongst themselves until appellant Ruffin emerged from the van declaring, "This b**** is really fighting back." Ruffin then proceeded to hit Bell twice with a hammer. A third woman, Rogers, subsequently entered into the fight and tased Bell twice in the stomach. Evans then proceeded to kick Bell in the stomach. Rogers asked Evans if she "got [Bell's] bag" and Evans responded in the affirmative.

An hour and fifty minutes later, an eyewitness, Melvina Rawlings, testified that around 7:50 PM, Ruffin was driving a green van. Additionally, a few weeks after this initial incident, Evans and Ruffin stopped their car in front of Bell as she was walking down the street. Evans yelled out the window, "You hot as s***. You talking to the feds."

After the original incident, Bell called 911 at 7:46 PM and met with law enforcement later that same night—specifically Officer Gregory Turner, Detective Joseph Belfiore, and Detective Greggory Pemberton.  In the initial 911 call, Bell did not identify any of the women who attacked her by name; however, she stated that one of the female assailants was her boyfriend's ex-girlfriend.  Three days after the incident, Bell met with the officers a second time and positively identified all three of the women from photo arrays.   Bell also positively identified the three women in court at trial.

However, at one point during trial, Bell testified that she had received the names of the women from Hawkins.  She said that "when [she] [described] Ebony [Ruffin] to him, he told [her] exactly who she was."  She admitted that she heard the name from Hawkins, who was not present during the incident.  Bell testified that—prior to the incident—she knew Ruffin only from Facebook and "somebody" informed her that Ruffin and Evans were friends.  Bell also stated that she was able to see "their faces" on Facebook and "that's how [she] knew exactly what [she] was doing."  She further admitted that at the time of the incident—prior to conversing with anyone—she did not know the name or identity of the specific woman (Ruffin) who hit her with the hammer.  However, she testified that she found out that it was Ruffin who utilized the hammer because she "got information

from people who know her who heard about [how] they just jumped [her] that told [her] who it was." When defense counsel asked Bell if Hawkins provided her with the names after the attack, she said "no" he did not because she "[already] knew the names."

Thus, it is apparent from the record that, at some point, Bell looked on Facebook to associate appellants' faces with names. At one point during trial, she was impeached regarding the fact that on February 27, 2014, she misidentified, while testifying under oath, a picture of Ruffin as Evans. However, Bell also stated that she "saw all of them" and "all of their faces" at the time of the attack, and she positively identified the three women as her attackers both in photo arrays a few days after the arrest and in court.

### B. The Threats Charge

Approximately a month after the incident, on October 14, 2012, Evans made a jail call to Hawkins. During their conversation, Hawkins asked Evans, referring to Bell, "What did she do?" Evans responded, "You'll find out when I f*** that b**** up." As a result of the statements made in this phone call, Evans was also

charged with threatening to injure in addition to the charges associated with the underlying incident.

At the beginning of trial, Evans's counsel moved to sever the threats count, asserting that it was "not related" to the underlying assault charge. The court denied Evans's oral motion, concluding that the threats charge was properly included because it was part of the "continuing circumstances." Later in trial, counsel objected to the introduction of the jail call itself, arguing that it was "more prejudicial than probative." However, the court overruled the objection, finding that the jail call "goes directly to one of the charged offenses," referring to the threats charge.

## II.

### A. Ruffin's Case on Appeal

Ruffin argues two sufficiency of the evidence claims on appeal: i) Bell's identification of appellant was weak and, accordingly, the trial court erred in not granting the defense's motion for judgment of acquittal, and ii) the government failed to prove that Ruffin had the intent necessary for aiding and abetting the robbery charge.

When reviewing sufficiency of evidence claims, we must consider whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (emphasis in original) (internal quotation marks omitted).

**(1) Identification**

Ruffin asserts that there was insufficient evidence for a conviction because Bell's identification was weak and founded upon hearsay. At trial, Ruffin's counsel raised these issues regarding the identification in a motion for judgment of acquittal. Thus, on appeal, we must review this claim under the sufficiency standard.

As a preliminary matter, we note that Ruffin did not file a motion to suppress the identifications. Unlike the cases of *Wade* and *Gilbert* and their progeny, the trial court in this case was not required to consider whether the in-court identification was still intact because any arguably suggestive pre-identification procedures were merely the actions of the victim, *i.e.* a non-state

actor, and not law enforcement. *See Gilbert v. California*, 388 U.S. 263, 272 (1967); *United States v. Wade*, 388 U.S. 218, 235-36 (1967).

Whether or not Hawkins or another person furnished Bell with the names (subsequent to which she procured their corresponding photographs on Facebook), the government emphasizes that the incident occurred during the daytime and Bell positively identified Ruffin in court and in photo arrays. Moreover, as the government points out, Bell never expressed uncertainty regarding her in-court or photo array identification. Thus, even if, as Ruffin argues, Bell heard additional information from Hawkins regarding the names of her attackers—she identified appellants in court as the women she observed on the day in question. Moreover, the testimony of eyewitness Rawlings revealed that Ruffin was driving the green van approximately two hours after the time that the incident occurred.

Accordingly, based on the evidence in the record, we find that there was sufficient evidence for a rational fact-finder to conclude beyond a reasonable doubt that Bell adequately identified Ruffin as a perpetrator in the attack. *See, e.g.*, *Carter v. United States*, 957 A.2d 9, 14 (D.C. 2008).

**(2) Aiding and Abetting: Robbery**

Ruffin further argues that the government failed to sufficiently prove Ruffin's *mens rea* for aiding and abetting the robbery.

For a conviction under the aiding and abetting theory, the government must demonstrate that: "(a) a crime was committed by someone, (b) the accused assisted or participated in its commission; and (c) [the accused's] participation was with guilty knowledge." *Tyree v. United States*, 942 A.2d 629, 636 (D.C. 2008) (internal quotation marks omitted).

Ruffin argues that because Evans—not Ruffin herself—physically stole Bell's purse, the government has failed to demonstrate that Ruffin aided and abetted the robbery charge. Ruffin reasons that even if she were present during the course of the attack and the robbery, she never intended to rob Bell and instead, only intended to assault her. However, as the government reasons, this argument fails because it does not consider that one can be found guilty of aiding and abetting by merely encouraging or facilitating a crime. *See Settles v. United States*, 522 A.2d 348, 356 (D.C. 1987). "Although mere presence at the scene is not enough to establish guilt under an aiding and abetting theory, the additional proof

of 'conduct which designedly encourages or facilitates a crime will support an inference of guilty participation in the crime as an aider and abettor.'" *Porter v. United States*, 826 A.2d 398, 405 (D.C. 2003) (quoting *Jefferson v. United States*, 463 A.2d 681, 683 (D.C. 1983)). Here, as the government reasons, Ruffin was present throughout the entirety of the assault, including the portion during which Evans and Ruffin were discussing stealing Bell's purse. Moreover, Ruffin assembled into the green van with the other women and a witness observed her driving the vehicle shortly after the time the incident occurred. Thus, we find the government's argument convincing that the jury could have made the reasonable inference that Ruffin drove the car away from the scene and facilitated in the robbery, as well as the assault.

## B. Evans's Case on Appeal

Evans asserts that the trial court abused its discretion by failing to sever the threats count from the assault charge and by admitting a video clip conversation between Evans and Hawkins. Moreover, she argues that the government did not provide sufficient evidence for Evans's aiding and abetting the two counts of assault with a deadly weapon (Rogers's use of the taser and Ruffin's use of the hammer) and the armed robbery charge. Finally, she states that the court should

have *sua sponte* excluded the 911 call as well as statements that Bell made to the officer as inadmissible hearsay.

### (1) Motion to Sever

Evans argues that the trial court erred in denying severance from the original assault charge. The threats charge occurred approximately a month after the assault and stemmed from Evans's phone call conversation with Hawkins during which, in response to Hawkins inquiring what Bell ever "[did] to [her,]" Evans stated, "You will find out what she did when I f*** that b**** up." Evans argues that the court should have severed the threats charge because it was unrelated to the underlying assault and occurred a month apart. Evans further argues that she was prejudiced by the joinder of the offense.

We review denials of motions to sever for abuse of discretion. *Bright v. United States*, 698 A.2d 450, 454 (D.C. 1997). Specifically, we consider whether the trial court abused its discretion in failing to sever the charges while balancing "the possibility of [impermissible] prejudice to the defendant[s] against the legitimate probative force of the evidence and the interest in judicial economy."

*Crutchfield v. United States*, 779 A.2d 307, 322 (D.C. 2001) (internal quotation marks omitted).

Our court has specifically elaborated on severance pertaining to additional threat charges in *Haney v. United States*, 41 A.3d 1227, 1230 (D.C. 2012). In *Haney*, our court held that a separate threats charge can be admissible in the trial of the underlying charged crime if the threats evidence: "(1) can be reasonably identified as a threat, (2) confirms a direct link between the accused and the crime charged, and (3) can be reasonably perceived to show consciousness of guilt, and … (4) the court determines that the prejudicial effect does not substantially outweigh its probative value." *Haney*, 41 A.2d at 1233 (footnotes omitted).

Evans does not assert misjoinder of the claims, nor does she dispute that the first two prongs of the *Haney* test are satisfied. Instead, Evans finds issue with the third and fourth prongs of the *Haney* test. However, we are persuaded by the government's argument that the display of Evans's animosity towards Bell in the phone call can be "reasonably perceived to show consciousness of guilt" of the crime charged. *See id.* As the government points out, Evans argued a misidentification defense theory at trial and thus, such further hostile language towards Bell is probative as it further inculpates Evans's nexus to the underlying

assault charge. Moreover, we do not find merit in Evans's argument that the prejudice substantially outweighs the probative value. The prejudice in this instance does not rise to an alarming level given the fact that the statements are not particularly descriptive or violent in nature and, as the government points out, the jury was given proper instructions to consider each charge and evidence separately.

Thus, the trial court did not abuse its discretion in declining to sever the threats charge from the main assault charge.

## (2) Aiding and Abetting: Assault with a Deadly Weapon and Armed Robbery

Evans asserts that there was insufficient evidence in support of her convictions for aiding and abetting the charges relating to weapons: one count of assault with a deadly weapon for the taser, one count of assault with a deadly weapon for the hammer, and armed robbery.

While reviewing Evans's sufficiency argument, we must consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Rivas*, 783 A.2d at 134.

Evans was found guilty of the charges relating to weapons via the aiding and abetting theory and accordingly, the government was required to prove Evans's guilty knowledge. *See Tyree*, 942 A.2d at 636. Accordingly, Evans argues that the government failed to prove such requisite knowledge beyond a reasonable doubt because it did not produce evidence that demonstrated that Evans was aware that Ruffin and Rogers would utilize weapons. However, this argument is unpersuasive because, as the government reasons, it can also satisfy this burden by demonstrating "present sufficient circumstantial evidence for the trier of fact to infer that the aider and abettor knew the principal was armed." *Robinson v. United States*, 100 A.2d 95, 106 (D.C. 2014). Moreover, as the government discussed in its brief at page nineteen, "if a defendant continues to participate in a crime after a [weapon] was displayed or used by a confederate, the jury may infer from [the defendant's] failure to object or withdraw that [s]he had such knowledge." *Tann v. United States*, 127 A.3d 400, 434 (D.C. 2015) (quoting *Rosemond v. United States*, — U.S. —, 134 S. Ct. 1240, 1250 n.9 (D.C. 2014)). Here, Evans did not withdraw from the attack after weapons were exposed and, instead, continued participating in the assault. Bell testified that Ruffin injected herself into the action by producing a hammer and stating, "This b**** is really fighting back." Bell further testified that, after Ruffin emerged with the hammer, Evans was standing directly in front of Ruffin trying to prevent Bell from fighting back against Ruffin.

Thus, Evans was still present and assisting in the attack when Ruffin brought out the hammer. Moreover, after Rogers tased Bell in the stomach, Bell testified that Evans was again still present at the scene—at which point Rogers asked Evans if she "got her bag?" Evans responded, "Yeah." Shortly thereafter, the three women descended back into the van and drove away. Moreover, as discussed further below, after the assault, the government introduced into evidence a video clip in which Evans informs Hawkins that she assaulted Bell with a taser and a hammer.

Thus, there is sufficient evidence for a rational fact finder to conclude that appellant is guilty of aiding and abetting the two counts of assault with a deadly weapon and the armed robbery charge.

## (3) Video Clip Admission

Evans argues that the trial court abused its discretion in admitting the video clip of Evans talking with Hawkins at the D.C. jail. In the video, Evans informs Hawkins that she had been arrested for assaulting Bell. However, at this time, the assault on Bell had already occurred, but Evans had not yet been arrested. In the clip, Evans informs Hawkins that she assaulted Bell with a taser and a hammer.

We review decisions to admit evidence for abuse of discretion. *Walker v. United States*, 982 A.2d 723, 734 (D.C. 2009). Evans urges that the video clip is more prejudicial than probative because the statement itself was untrue and people around the community already knew that Bell had accused Evans of the assault with a hammer and taser—thereby arguing that this evidence offers little probative value as it is not immediately relevant to knowledge or motive. The government argues that the clip is relevant "to show Evans's knowledge of the details of the crime even before she was arrested or charged, and to rebut her claim that she was 'not there' during the assault." We find appellant's argument unconvincing. As the government argues, knowledge of the details of the assault—especially the use of a hammer and taser—demonstrates association with the incident and thus is probative, especially in light of a misidentification defense. Irrespective of the fact that Evans may have misrepresented the timing of the events, she still demonstrated knowledge of pertinent details that establish a link to the incident. Accordingly, the trial court did not abuse its discretion in admitting the video clip into evidence.

**(4) Out-of-Court Statements**

Evans furthers that the court should have *sua sponte* excluded Bell's out-of-court statements to the 911 operator as well as those made to the police officers. However, trial counsel did not object to the admission of the statements at the trial level. Accordingly, the government asserts that such arguments are waived. Evans argues that this inquiry should be reviewed for plain error because the admission of these statements was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of trial." *Venture v. United States*, 927 A.2d 1090, 1102 (D.C. 2007). We find Evans's argument unpersuasive because even if any error occurred, it did not amount to a "miscarriage of justice" or "jeopardize the very fairness and integrity of the trial" as the plain error review standard requires. *See id.*

The parties further debate whether or not the statements are, in fact, hearsay. However, we need not delve into this analysis because such statements are not prejudicial enough to warrant reversal on plain error review.

### a) The 911 Call

Evans argues that Bell's 911 call should not have been admitted into evidence. She reasons that the call was i) inadmissible hearsay that ii) improperly bolstered Bell's testimony regarding the incident that occurred. Evans acknowledges that the trial attorney did not object to the call's admission at trial, however, still asserts that the court should have excluded the call *sua sponte*.

The parties debate whether the 911 call amounted to inadmissible hearsay or qualified under the excited utterance exception. However, even if the call were to be classified as hearsay, the question becomes whether the court committed plain error when failing to *sua sponte* exclude the 911 call. Accordingly, this inquiry must be conducted under a plain error standard, and appellant must demonstrate that: "(1) that the trial judge committed error; (2) that the error was plain, *i.e.*, clear or obvious; (3) that the error affected his substantial rights; and (4) that a failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Jones v. United States*, 127 A.3d 1173, 1187 (D.C. 2015) (citing *Marshall v. United States*, 15 A.3d 699, 710 (D.C. 2011)).

Evans argues that the statement was inadmissible under an excited utterance exception because Bell did not call 911 immediately after the incident happened. Instead, she called Hawkins's mother, returned to her own mother's house, and *then* called 911 approximately two hours later. The government asserts that even if such an error were to be found, there was no "violation of substantial rights" or any type of prejudice that resulted from the admission of the call into evidence.

As the government asserts, the court's failure to *sua sponte* exclude this testimony did not affect Evans's "substantial rights" or "seriously" affect the "fairness, integrity, or public reputation." *Jones*, 127 A.3d at 1187. Any improper "bolstering" of Bell's testimony is not egregious enough to amount to plain error. Because Bell testified herself and was cross-examined about these facts, the harm resulting from the error was minimal—as opposed to, for example, if the hearsay was the only source of novel information. Moreover, Evans argued a misidentification defense theory and the 911 call did not name or describe her attackers or bolster Bell's *identifications*.[7]

---

[7] Evans argues that her misidentification theory was "foreclosed by the constant repetition of Ms. Bell's account of the incident.…" However, Evans's point ignores the fact that Bell did not identify Evans by name or descriptions in the 911 call, but merely stated that one of the assailants was her boyfriend's ex-girlfriend.

Thus, regardless of whether or not this was error, in the absence of a defense objection, reversal is not warranted in this case for the trial court's failure to *sua sponte* strike the hearsay testimony. *See, e.g.*, *Derrington v. United States*, 488 A.2d 1314, 1334 (D.C. 1985) ("Much of this testimony was inadmissible hearsay and opinion testimony … but it was also independent of his tainted testimony, and in the absence of defense objection, the trial court was not under a duty to strike it *sua sponte.*").

Accordingly, we find no reversible error in the court's failure to *sua sponte* strike the 911 call.

### b) The Officers' Statements

Evans further asserts that Officer Turner's, Detective Belfiore's, and Detective Pemberton's testimony containing Bell's account of the incident constituted inadmissible hearsay. Regarding the court's failure to *sua sponte* strike the officers' testimony, Evans makes a similar argument as articulated above with respect to the 911 call.

For the same reasons stated above, the trial court's failure to *sua sponte* exclude any inadmissible hearsay does not amount to plain error and thus does not warrant reversal.

**(5) Opening and Closing**

Evans argues that the government, in its opening and closing statements, improperly emphasized Bell's pregnancy and insinuated that appellant's motive was to murder the fetus—in an effort to "inflam[e] the jury's passions."

We review this prosecutorial argument issue for plain error because, as the government points out, this issue was not objected to at the trial level. *See, e.g.*, *Jones*, 127 A.3d at 1187. Thus, in order for an error to be found under this standard, the appellant must prove "(1) . . . error; (2) that the error was plain, *i.e.,* clear or obvious; (3) that the error affected his substantial rights; and (4) that a failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *Marshall*, 15 A.3d at 710). In the case of prosecutorial error, this court will reverse if the conduct "so clearly prejudiced substantial rights as to jeopardize the fairness and integrity of the trial." *Irick v. United States*, 565 A.2d 26, 32 (D.C. 1989).

Evans argues that the prosecution over-emphasized Bell's pregnancy and "went too far in its effort to demonize the defendant and unnecessarily engender[ed] sympathy for the victim." Moreover, she asserts that the prosecutor herself was pregnant and that this prosecutor selection created an "overwhelming" "emotional impact."

However, absent an objection, there exists no error so plain that the trial court should have excluded this information *sua sponte*. Moreover, as the government argues, the pregnancy motif was relevant to its case theory that Evans's motive was jealousy regarding Bell's boyfriend and their unborn child. Moreover, such language in an opening or closing would not affect Evans's substantial rights or jeopardize the fairness or integrity of a trial. *See, e.g.*, *Jones*, 127 A.3d at 1187.

Thus, finding no reversible error—whether individual or cumulative—in the trial court's findings, the judgment of the trial court is

*Affirmed.*